UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERCER COUNTY CHILDRENS MEDICAL DAYCARE, LLC, et al.<br><br>　　　　　　Plaintiffs,<br>v.<br><br>MARY O'DOWD, et al.<br><br>　　　　　　Defendants. | Civ. No. 13-1436<br><br>**OPINION** |

THOMPSON, U.S.D.J.

This matter appears before the Court on the motion to dismiss brought by Defendant Mary O'Dowd and others, (Doc. No. 32), and the motion to dismiss brought by Defendant Carlisle, (Doc. No. 30). The Court has issued the Opinion below based upon the written submissions of the parties and after oral argument. For the reasons stated herein, the Court grants the first motion, (Doc. No. 32), in part and denies in part, and the Court denies the motion of Defendant Carlisle, (Doc. No. 30).

INTRODUCTION

This action stems from regulations and administrative actions taken by the State of New Jersey, its officials, and its departments that have had the effect of reducing the number of patients Plaintiff Mercer County Children's Medical Daycare ("Mercer") can treat. (Doc. No. 1, 2). Mercer is a New Jersey L.L.C. licensed to provide pediatric medical day care services in New Jersey. (Doc. No. 1, 3). In addition to Mercer, ten children ("Children") who have been denied pediatric medical day care services as a result of these regulations are also plaintiffs. (Doc. No. 1, 3). The 14 defendants represented by the New Jersey Attorney General's Office

1

bringing the present motion can be grouped into two categories: (1) "State Defendants"[1] and 2) "State Officials."[2] (Doc. No. 1, 6). Carlisle, an L.L.C. that provides consulting and business development services, is also a defendant. (Doc. No. 1, 7).

Plaintiffs bring federal claims against State Defendants and State Officials under 42 U.S.C. § 1983, claiming violations of Equal Protection, Due Process, and the Takings Clause. Plaintiffs also claim violations of Medicaid and the Supremacy Clause. The state law claims concern common law fraud against State Officials, State Defendants, and Carlisle.

On February 25, 2003, the Office of Legislative Services released an audit report of the Pediatric Medical Daycare Center ("PMDC") programs, finding that the regulations governing PMDC licenses were incompatible. (Doc. No. 1, 16-18). At the time, NJDOH issued licenses on a 30-square-feet-per-patient basis. However, the NJDHS regulations set an absolute maximum of 27 visiting patients per facility per day. (Doc. No. 1, 16).

In June 2003, Mercer received a PMDC license based on the square foot regulation for between 70 and 72 slots. (Doc. No. 1, 16). On November 3, 2003, NJDOH informed PMDC providers that the 27-child limitation would be enforced and that the agencies erred in issuing licenses for more than 27 children. In April 2005, NJDOH reminded Mercer that it must comply with the 27-child limit. However, after a hearing before the Office of Administrative Law, Mercer was allowed to continue providing service to up to 70 children a day. (Doc. No. 1, 16-21).

---

[1] New Jersey Department of Health ("NJDOH"); New Jersey Department of Human Services ("NJDHS"); Office of the Comptroller; New Jersey Medicaid Fraud Division ("NJMFD").

[2] Matthew Boxer, the State Comptroller; Mark Anderson, Inspector General of NJMFD; Deborah Gottlieb, Director of Program Compliance and Health Care Financing for NJDOH; Michael Kennedy, New Jersey Deputy Attorney General; John Guhl, Director of DMAHS; Jennifer Velez, Commissioner of NJDHS; Louis Greenwald, a New Jersey State Assemblyman; Mary O'Dowd, the Commissioner of NJDOH; and Governor Christie.

On November 3, 2008, NJDOH proposed regulations N.J.A.C. 8:87 and 8:43, which included a 27-patient-per-day limitation. On March 2, 2011, NJDOH did the following: (1) found that Mercer was not complying with the 27-patient limitation; (2) placed Mercer on admissions curtailment; (3) ordered Mercer to engage a Consultant Administrator to oversee compliance; and (4) fined Mercer $1.5 million. (Doc. No. 1, 22). On March 8, 2011, NJMFD and Anderson issued Mercer a notice of claim for $12 million in excess payments and treble damages for serving children that were not entitled to services between March 22, 2004 and December 8, 2010. On August 1, 2011, NJDOH amended Mercer's 70-child license to 27. (Doc. No. 1, 33).

In September 2011, NJDOH fined Mercer $53,000 for providing services to an ineligible patient. In June 2012, Mercer disregarded the order and began admitting new patients, in response to which NJDOH and Gottlieb issued a penalty of $13,500. As a result of these actions, Plaintiffs brought the following claims:

    Count I: Failure to Administer the Medicaid Program in Compliance with Federal Law

    Count II: Preemption (Medicaid)

    Count III: Equal Protection

    Count IV: Violation of Due Process

    Count V: Violation of Takings Clause

    Count VI: Fraud against State Defendants

    Count VII: Fraud against Defendant Carlisle

DISCUSSION

The Court will first take notice of the applicable legal standard for motions to dismiss, and then examine whether any Defendants are entitled to immunity before dealing with each Count.

*1. Legal Standard*

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F. 3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id*. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" the facts must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id*. at 210, 211 (quoting *Iqbal*, 556 U.S. 678-79).

*2. Analysis*

After determining which claims are barred by immunity, the Court will deal with the merits of each Count with respect to the remaining Defendants.

### a. Sovereign Immunity

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Claims under 42 U.S.C. §1983 are subject to this sovereign immunity bar. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66 (1989). "This bar exists whether the relief sought is legal or equitable." *Papasan v. Allain*, 478 U.S. 265, 276 (1986). Sovereign immunity extends to arms of the state—including agencies, departments, and officials—when the state is the real party in interest. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d. Cir. 2002). To determine whether the state is the real party in interest, the Court considers three factors: (1) whether payment of a judgment resulting from the suit would come from the state treasury; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. *See Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir. 1989) (en banc).

Viewing the facts in the light most favorable to Plaintiffs, the Court finds that State Defendants are immune. *See Fla. Department of Health and Rehabilitative Servs. v. Fla. Nursing Home Assn.*, 450 U.S. 147 (1981) (agencies of state governments, such as the department of health or treasury, are part of the State for the Eleventh Amendment purposes). Accordingly, all 42 U.S.C. §1983 claims against State Defendants are dismissed. Furthermore, all 42 U.S.C. §1983 claims for monetary damages against State Officials acting in their official capacity are dismissed.[3]

However, the Supreme Court in *Ex parte Young* "created an exception to th[e] general principle [of sovereign immunity] by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Monsour*, 474

---

[3] The Court does not have supplemental jurisdiction over the claims of non-consenting states. *See Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541 (2002).

U.S. 64, 68 (1985); *Ex parte Young*, 209 U.S. 123 (1908). "The Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green*, 474 U.S. at 68. Private parties can sue state officials in their official capacity to enforce federal laws and regulations. *Id.* Therefore, Defendants' motion to dismiss is denied to the extent that Plaintiffs seek prospective injunctive relief against State Officials acting in their official capacity. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 279 (1989).

### b. Qualified and Absolute Immunity

After dismissing all claims against State Defendants and all claims, except for prospective injunctive relief, against State Officials in their official capacity, the Court next examines whether the State Officials are individually entitled to immunity, both absolute and qualified, for actions taken in the course of their official duties.

#### i. Legal Standards for Absolute and Qualified Immunity

The Court will first discuss the applicable legal framework for absolute immunity before turning to qualified immunity. Two forms of absolute immunity are relevant in this case: prosecutorial immunity and legislative immunity. Prosecutors enjoy absolute immunity from liability in civil suits for actions taken in their role as prosecutors. *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). When agency officials and agency attorneys perform "certain functions analogous to those of a prosecutor," absolute immunity applies to them as well. *Butz v. Economou*, 438 U.S. 478, 515-16 (1978). "The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.* at 515. To protect the discretion of administrative proceedings, such officials are absolutely immune from damages. *Id.* Immunity

6

also extends to attorneys representing government agencies, including the state attorney general's office. *See Mamman v. Chao*, 2011 U.S. Dist. LEXIS 50903, *14-17 (D.N.J. 2011); *Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988).

Second, state, local, and regional legislators "are entitled to absolute immunity from liability under §1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. The privilege of absolute immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) (internal quotation marks omitted). Therefore, it simply is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Id.*

Qualified immunity is also immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). However, when analyzing qualified immunity, the Court asks two different questions: 1) "whether the plaintiff has alleged the deprivation of an actual constitutional right at all;" and 2) "whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The latter question "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

7

Constitution," under color of law. *Iqbal*, 556 U.S. at 676; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

      ii. Application to State Officials

First, Kennedy is an attorney acting on behalf of NJDOH. His alleged wrongdoing stems from the administrative proceeding in which the penalty was enforced. Viewing the facts in the light most favorable to Plaintiffs, Kennedy is entitled to absolute immunity.

Second, Gottlieb and Anderson engaged in similarly protected activities. Gottlieb decided to bring sanctions against Mercer, while Anderson issued a notice of claim against Mercer. Such actions are protected by absolute immunity.

Third, Velez is being sued because of her position as Commissioner of NJDHS. Plaintiffs do not allege sufficient individual wrongdoing; therefore, Plaintiffs cannot bring a §1983 claim. *See Iqbal*, 556 U.S. at 676 (requiring an "official's own actions" violate the Constitution).

Fourth, Plaintiffs similarly do not allege that Guhl, the Director of DMAHS, committed individual conduct that would give rise to a valid §1983 claim.

Fifth, Greenwald is being sued for actions stemming from his role as a State Assemblyman and as an "owner and/or director and/or officer" of Carlisle. As an Assemblyman, Greenwald introduced the State budget, which included medical regulations. For this action, Greenwald receives absolute immunity. *See Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003) (state legislators are entitled to "absolute immunity from suit and liability for their legislative actions"); *Baraka*, 481 F.3d at 195 (protected actions include "drafting, introducing, debating, passing or rejecting legislation"). Next, Greenwald "suggested that Plaintiff Mercer replace [its consultant] with Defendant Carlisle," was copied on correspondence between Carlisle and Mercer, and called Mercer to demand payment to Carlisle. (Doc. No. 1, 26). To state a §1983

8

claim, Plaintiffs must allege that the defendant was acting under the color of law. *Sullivan*, 526 U.S. at 49-50. Therefore, Plaintiffs cannot bring a § 1983 claim for these actions.

Sixth, Plaintiffs allege that O'Dowd, the Commissioner of NJDOH, testified before the Assembly Budget Committee and thanked the Chairman for presenting the budget. O'Dowd's actions do not amount to individual actions that violate constitutional or statutory rights.

Seventh, Boxer, the New Jersey State Comptroller, is responsible for overseeing audits and performance reviews in the New Jersey Government. Here too, Plaintiffs fail to allege sufficient individual wrongdoing with respect to Boxer.

Therefore, Plaintiffs' § 1983 claims against State Officials in their individual capacity are dismissed.

### c. Medicaid

Plaintiffs also allege that Defendants are violating Medicaid and bring suit under 42 U.S.C. § 1983. In Count I, Plaintiffs allege two violations: (1) a violation of 42 U.S.C. § 1396a(30)(A) for "fail[ure] to administer the Medicaid program in an efficient and effective manner," (Doc. No. 1, 44); and (2) a violation of 42 U.S.C. § 1396d(r)(5), which defines the Early and Periodic Screening, Diagnostic and Treatment services that children are eligible to receive. In Count II of the Complaint, Plaintiffs argue that the NJDOH regulations are inconsistent with Federal legislation, specifically Medicaid § 1396a(a) at (10)(B), (17), and (23), and 42 U.S.C. § 1396d(r)(5).

The Court will first examine whether Plaintiffs can bring the present Medicaid claims under 42 U.S.C. § 1983 and the Supremacy Clause before examining whether Plaintiffs have met the applicable pleading requirements.

i. Medicaid Violations Under 42 U.S.C. § 1983

To obtain relief under 42 U.S.C. § 1983, Plaintiffs "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone,* 520 U.S. 329, 340 (1997). In *Blessing*, the Court set forth three "factors" for courts to consider in deciding whether a statute confers a right enforceable under 42 U.S.C. § 1983: (1) whether Congress "intended that the provision in question benefit the plaintiff;" (2) whether "the right assertedly protected by the statute is . . . so 'vague and amorphous' that its enforcement would strain judicial competence;" and (3) whether the provision is "couched in mandatory, rather than precatory, terms." 520 U.S. at 340-341 (citations omitted). In *Gonzaga University v. Doe,* 536 U.S. 273, 283 (2002), the Court clarified that "anything short of an unambiguously conferred right" could not "support a cause of action brought under" 42 U.S.C. § 1983, and emphasized that only "*rights*, not the broader or vaguer 'benefits' or 'interests,' may be enforced under the authority of that section." *Id; see Wilder v. Va. Hosp. Assn.*, 496 U.S. 498, 502 (1990)(allowing a § 1983 suit by health care providers when the statute explicitly conferred specific, "objective" monetary entitlements upon plaintiffs); *Suter v. Artist M.*, 503 U.S. 447 (1992) (a requirement that States receiving funds for adoption assistance have a "plan" to make "reasonable efforts" to keep children out of foster homes conferred no specific, individually enforceable rights). "In sum, if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms-no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action." *Gonzaga*, 538 U.S. at 282.

1. <u>Applied to 42 U.S.C. § 1396a(30)(A)</u>

If a state chooses to participate in the Medicaid program, "it must comply with the Medicaid Act in implementing regulations promulgated by the Secretary of Health and Human Services."

*Wilder v. Va. Hosp. Ass'n.*, 496 U.S. 498, 502 (1990). 42 U.S.C. § 1396a(30)(A) directs that the State plan assures payments "are consistent with efficiency, economy, and quality of care" and "are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area."

The question of whether Plaintiff Mercer can bring a claim is straightforward. The Third Circuit has specifically found that providers are not an intended beneficiary of 42 U.S.C. § 1396a(30)(A). *See Pa. Pham. Ass'n v. Houston*, 283 F.3d 531, 532 (3d Cir. 2002); *see also New Jersey Primary Care Ass'n Inc. v. State of N.J. Dep't Hum. Serv's.*, 722 F.3d 527, 538-39 (3d Cir. 2013) (finding that although providers may benefit from enforcement of a federal Medicaid provision, Congress did not intend to confer a private right of action to health care providers).

However, the status of Plaintiff Children is less clear. In dicta, the Third Circuit suggested that "Medicaid recipients plainly satisfy the intended-to-benefit requirement and are thus potential private plaintiffs." *Pa. Pham. Ass'n*, 283 F.3d at 544. However, this opinion was published before *Gonzaga*, which stressed the requirement that rights must be unambiguously confirmed. Since *Gonzaga*, other Circuits have held that 42 U.S.C. § 1396a(30)(A) does not provide recipients with a private cause of action. *See Westside Mothers v. Olszewski*, 454 F.3d 532, 541-43 (6th Cir. 2006) (subsection (30)(A) "has an aggregate focus rather than an individual focus" and its "broad and nonspecific" language is "ill-suited to judicial remedy"); *Mandy R. v. Owens*, 464 F.3d 1139, 1147-48 (10th Cir. 2006) ("the flexible, administrative standards embodied in the statute do not reflect a Congressional intent to provide a private remedy for their violation"); *Sanchez v. Johnson*, 416 F.3d 1051, 1058-62 (9th Cir. 2005); *see also Douglas v. Independent Living Ctr. Of Southern Cal.*, 132 S.Ct. 1204, 1211-12 (2012) (Roberts, C.J.

11

dissenting)(neither providers nor beneficiaries can assert a § 1983 claim based on Sect. 1396a(30)(a));[4] *Sanchez v. Johnson*, 416 F.3d 1051, 1058-62 (2005)("the flexible, administrative standards embodied in [Sect. 30(A)] do not reflect a Congressional intent to provide a private remedy for their violation."). Based on the above reasons as well as the text of the provision, the Court finds that neither Plaintiff Children nor Plaintiff Mercer can bring this claim.

### 2. *Applied to 42 U.S.C. § 1396d(r)(5)*

42 U.S.C. § 1396d(r)(5) defines the Early and Periodic Screening, Diagnostic and Treatment services that children are eligible to receive. These services include "health care, diagnostic services, treatment, and other measures [. . .] to ameliorate defects and physical and mental illnesses and conditions discovered by the screening services [. . .]." 42 U.S.C. § 1396d(r)(5). Unlike provisions that contemplate repayment of Medicaid providers, this provision does not unambiguously contemplate providers. Therefore, Mercer cannot bring a private cause of action under this provision. Furthermore, this definitional provision does not unambiguously confer a right to specific, judicially-enforceable benefits on patients. Accordingly, Plaintiff Children cannot bring a claim under this provision.

---

[4] Though Chief Justice Roberts opined on the issue in this case, the Court was not asked to determine whether this statute created a private cause of action under 42 U.S.C. § 1396a(a)(30)(A). *See Douglas v. Independent Living Center of Southern California, Inc.*, 2011 WL 2132705 (U.S.), 9 (U.S.,2011) ("Respondents do not dispute that there is no statutory private right of action to enforce 42 U.S.C. §1396a(a)(30)(A) [. . .] Section 1396a(a)(30)(A) does not itself create an individual entitlement to a certain level of payments or to covered services that would be enforceable under this Court's decision in *Gonzaga University v. Doe,* 536 U.S. 273 (2002). It instead provides broad criteria to guide HHS's determinations regarding the adequacy of the methods and procedures set out in a State's Medicaid plan.").

## ii. Supremacy Clause

The Supremacy Clause creates an independent right of action where a party alleges preemption of state law by federal law. *See Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n. 14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *see also St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S.V.I.,* 218 F.3d 232, 240 (3d Cir. 2000) ("[A] state or territorial law can be unenforceable as preempted by federal law even when the federal law secures no individual substantive rights for the party arguing preemption.); *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 317 (3d Cir. 2013).

Here, *Shaw v. Delta Air Lines* recognized a private right of action under the Supremacy Clause in a similar case. 463 U.S. 85, 96 n. 14 (1983). Recently, the Supreme Court in *Douglas v. Independent Living Center* granted *certiorari* "to decide whether Medicaid providers and recipients may maintain a cause of action under the Supremacy Clause to enforce a federal Medicaid law." *Douglas v. Independent Living Center* 132 S.Ct. 1204, 1207 (2012). However, the Court declined to answer that question. Therefore, even though the dissent in *Douglas* strongly suggested that the Supremacy Clause does not provide a cause of action when Congress has declined to provide one, the Court's previous decision in *Shaw v. Delta Air Lines,* "remains binding on us." *Lewis v. Alexander,* 685 F.3d 325, 346 n. 20 (3d Cir. 2012).

iii. Sufficiency of Medicaid Counts

After finding that Plaintiffs may bring the action for a violation of the Supremacy Clause, the Court turns to examine whether the Plaintiffs have made sufficient allegations to support a finding in their favor.[5]

Under the federal preemption doctrine, Congress has the "power to preempt state legislation if it so intends." *Roth v. Norfalco LLC*, 651 F.3d 367, 374 (3d Cir. 2011). Conflict preemption applies when state law prevents the "accomplishment and execution of the full purposes and objectives of Congress." *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010).

Here, Medicaid law does not direct states in the administration of EPSDT services to clinically eligible children. *Katie A. v. Los Angeles Cnty*, 481 F.3d 1150, 1159 (9th Cir. 2007) ("While the states must live up to their obligations to provide all EPSDT services, the statute and regulations afford them discretion as to how to do so."); *Moore v. Reese*, 637 F.3d 1220, 1238 (11th Cir. 2011) ("a state Medicaid agency 'is not required to furnish the service through every setting or provider type,' so long as it can 'demonstrate sufficient access' to an EPSDT-required service."). However, Plaintiffs show that Plaintiff Children had a difficult time accessing proper health care and were forced to wait long periods before receiving access to treatment. Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged facts sufficient to find that these regulations are preempted by federal law.

d. **Equal Protection**

§1 of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." Unless the case involves a protected class, the Court employs the rational basis test to determine if the "classification in question is rationally

---

[5] Though the Court need not reach this question for the 42 U.S.C. § 1983 Medicaid claims, the following analysis would also apply to those claims.

related to a legitimate state interest." *Kimel v. Fla. Bd. Of Regents*, 528 U.S. 62, 83 (2000). In order to state a claim under the rational basis test, "plaintiffs must allege: 1) the defendant treated him differently from others similarly situated; 2) the defendant did so intentionally; and 3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see also Bradley v. U.S.*, 299 F.3d 197, 206 (3d Cir. 2002) (plaintiffs must allege that they are members of a protected class that was treated differently from members of a similarly situated class). Persons are similarly situated when they are alike "in all relevant aspects." *Nordlinger v. Han*, 505 U.S. 1, 10 (1992).

Here, Plaintiffs claim two violations: 1) the limitations discriminatorily apply only to children and providers who serve children but not adults or providers who serve adults; and 2) the limitations caused the treatment of children in Mercer County to become "less in amount, duration, and scope than medical assistance made to children in 'other geographical areas.'"

Plaintiffs fail to show that children receiving care and adults receiving care are similarly situated for the purposes of the Equal Protection Clause. Plaintiffs also fail to show that children in Mercer County are similarly situated to children in other geographic areas. Furthermore, the State could have a legitimate state interest in limiting the number of child patients, such as enhancing the quality of care for "medically complex children" and preventing the spread of disease. (Doc. No. 32, 12); *see F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 307 (1993) ("Legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."); *Heller v. Doe*, 509 U.S. 312, 320 (1993) (States need not articulate the purpose or rationale for classifications). The State could have rationally concluded that restrictions would promote the health of the children. *See Sammon v. N.J. Bd. Of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995) ("A court engaging in

15

rational basis review is not entitled to second guess the [agency] on the factual assumptions or policy considerations underlying the [regulation]"). Thus, the Equal Protection claim fails.

### e. Due Process

The Fourteenth Amendment demands that no State shall "deprive any person of life, liberty, or property, without due process of law." Due process comes in two forms: procedural and substantive. The Court will discuss each in turn.

#### i. Procedural Due Process Claim

To establish a procedural due process claim, a plaintiff must show two things: (1) that a protected property interest was taken; and (2) that the procedural safeguards surrounding the deprivation were inadequate. *Johnson v. Guhl*, 91 F. Supp. 2d 754, 772 (D.N.J. 2000); s*ee also Board of Regents v. Roth,* 408 U.S. 564, 568–69 (1972). "The types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (citations omitted); *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007). "To have a property interest in a benefit, a person clearly must . . . have a legitimate claim of entitlement to it." *Bd. Of* Regents, 408 U.S. at 577. Property interests "dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure benefits and that supports claims of entitlement to those benefits. *Id*. Licenses can be protected property interests in some cases. *See, e.g., Bell v. Burson*, 402 U.S. 535 (1971) (driver's license); *Barry v. Barchi*, 443 U.S. 55 (1979) (horse trainer's license).

Here, Mercer argues that the State granted a license to provide services to a certain number of individuals, 70 to 72. *See Providence Pediatric Med. Daycare, Inc. v. Alaigh*, 799 F. Supp.

16

2d. 364, 375-76 (D.N.J. 2011) (finding it "plausible that Plaintiffs may have a property interest in their PMDC licenses or the ownership and use of their physical facilities").

However, even assuming a deprivation, Plaintiffs failed to allege a sufficient deficiency in process. For instance, the State has a procedure for challenging fines and penalties through the Office of Administrative Law. N.J.S.A. 26:2H-13. Also, beneficiaries could appeal if denied PMDC service, under N.J.A.C. 8:87-3.5, or appeal a determination of ineligibility, under N.J.A.C. 10:49-10. However, Plaintiffs have not alleged that the processes available to them for any of the alleged deprivations are sufficiently deficient to justify finding a violation.

### ii. Substantive Due Process Claim

"[U]nder some circumstances, the denial of or interference with a property interest may violate substantive due process as well." *Providence Pediatric Med. Daycare, Inc. v. Alaigh*, 799 F. Supp. 2d. 364, 375-76 (D.N.J. 2011). "[E]xecutive action violates substantive due process only when it shocks the conscience." *UA Theatre Circuit, Inc. v. Twp of Warrington*, 316 F. 3d 392, 399-400 (3d Cir. 2003). "[O]nly fundamental rights and liberties which are deeply rooted in this Nation's history and tradition and implicit in the concept of [ ] ordered liberty" receive protection under substantive due process. *River Nile Invalid Coach & Ambulance, Inc. v. Velez*, 601 F. Supp. 2d 609, 621 (D.N.J. 2009) (citations omitted). Here, Plaintiffs do not allege any violation of fundamental rights that would "shock the conscience." Viewing the facts in the light most favorable to Plaintiffs, the Court finds that the alleged violation does not rise to a substantive due process violation.

### f. Takings Clause

The Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. AMDT. V. The Takings Clause "does not prohibit the taking of

17

private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church v. Cnty of Los Angeles*, 482 U.S. 304, 314 (1987). "[W]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Ark. Game & Fish Comm'n v. United States*, 133 S. Ct. 511, 518 (2012).

A "taking" clearly occurs when there has been a "permanent physical occupation of property" or a "regulation that permanently requires a property owner to sacrifice all economically beneficial use of his or her land." *Id*. However, "private property can be effectively taken by government through regulatory measures that do not amount to physical occupation or appropriation." *Bernardsville Quarry, Inc. v. Borough of Bernardsville*, 129 N.J. 221, 231 (1992). Thus, "most takings claims turn on situation-specific factual inquiries." *Ark. Game and Fish Comm'n*, 133 S.Ct. at 518. The Court will examine (1) "the economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the character of the governmental action." *Connolly v. Pension Ben. Guaranty Corp.*, 475 U.S. 211, 224 (1986) (internal citations omitted).

Here, Plaintiffs allege that Defendants' actions of "asserting dominion and control over Plaintiff Mercer's 70 [patient] license, without just compensation" violated the Takings Clause. However, the regulation: 1) allowed Plaintiff Mercer to continue treating patients in the amount recognized as safe by the relevant agencies; 2) occurred in a field that is traditionally and heavily regulated by state agencies; and 3) was a regulatory, non-physical taking. Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to allege sufficient facts to support a finding in their favor.

### g. Fraud

A common law fraud claim in New Jersey consists of the following elements: "(1) knowing misrepresentation by a defendant as to a material fact; (2) defendant's intention to induce plaintiff to rely on that misrepresentation; (3) reliance by plaintiff on the misrepresentation; and (4) resulting damage to plaintiff." *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990). Federal Rule of Civil Procedure 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Allegations of date, place or time fulfill these functions, but are not required so long as plaintiffs "inject[] some precision and some measure of substantiation into their allegations of fraud." *Seville Industrial Machinery Corp. v. Southmost Co.*, 742 F.2d 786, 791 (3d Cir. 1984).

a. State Officials

Here, Plaintiffs contend that fraud occurred when Defendants: (1) "advised Plaintiff Mercer that it was required to hire an Administrative Consultant;" (2) "failed to reveal that Defendant Carlisle was not an independent Administrative Consultant;" (3) "failed to reveal that Defendant Carlisle was not a PMDC consultant;" and (4) "failed to reveal the obvious conflict inherent in forcing Plaintiff Mercer to make $25,000 a month payments to the company of Defendant Majority Leader Greenwald." (Doc. No. 1, 50). Plaintiffs allege that Defendants knew these actions were wrong. (Doc. No. 1, 50).

In the Complaint, Plaintiffs specifically allege that Defendants "t[old] Plaintiff Mercer to hire Carlisle," a company with which Greenwald had a close relationship. (Doc. No. 1, 26) (Greenwald "suggested" that Plaintiff Mercer hire a Carlisle). Viewing the facts in the light most

19

favorable to Plaintiffs, the Court finds that Plaintiffs have stated a claim that should not be dismissed at this early stage of litigation.

    b. Defendant Carlisle

Here, Plaintiffs argue that the "body of the complaint" makes it clear that Carlisle "worked hand in glove with State Defendants, aiding and abetting State Defendants." However, Plaintiffs fail to state how Defendant Carlisle was specifically involved with the allegedly fraudulent actions committed by State Officials.

Plaintiffs also allege that Defendant Carlisle committed fraud when it "tricked [Mercer] into signing the contract" without the agreed upon changes. (Doc. No. 38, 5). Plaintiffs contend that Defendant Carlisle knew that Plaintiff Mercer was mistaken and that Defendant Carlisle intended to deceive Plaintiff Mercer into signing. (Doc. No. 1, 51). At this stage in the litigation, the Court finds that dismissal of the fraud claim with respect to the "trick" is premature.

## CONCLUSION

For the foregoing reasons, the Court grants the motion of State Defendants and State Officials, (Doc. No. 32), in part and denies in part, and the Court denies the motion of Defendant Carlisle, (Doc. No. 30).

                                                  */s/ Anne E. Thompson*
                                                  ANNE E. THOMPSON, U.S.D.J.

Date: 2/7/14