NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERCER COUNTY CHILDREN'S MEDICAL DAYCARE, LLC et al., | Civ. No. 13-1436 |
| Plaintiffs, | **OPINION** |
| v. | |
| MARY O'DOWD, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

This matter comes before the Court on the motion for summary judgment by Defendant Louis Greenwald. (ECF No. 132.) Plaintiffs oppose. (ECF No. 149.) After reviewing the parties' written submissions and without oral argument pursuant to Local Civil Rule 78.1(b), the Court will grant Defendant's motion.

BACKGROUND

In light of the numerous proceedings in this matter, the Court will briefly outline here only those facts necessary for the present Motion. Plaintiffs are the Mercer County Children's Medical Daycare, LLC ("Mercer") and ten individual children who were unable to obtain pediatric medical daycare services from Mercer as a result of certain regulatory actions taken by the State of New Jersey,[1] its departments, and its officials.[2] Pediatric medical daycare

---

[1] The term "State Defendants" includes the following Defendant entities: New Jersey Department of Health ("NJDOH"); New Jersey Department of Human Services ("NJDHS"); Office of the Comptroller; and New Jersey Medicaid Fraud Division ("NJMFD").

[2] The term "State Officials" includes the following individual Defendants: Matthew Boxer, the State Comptroller; Mark Anderson, NJMFD Inspector General; Deborah Gottlieb, Director of Program Compliance and Health Care Financing for NJDOH; Michael Kennedy, New Jersey

1

("PMDC") is a program managed by NJDOH to provide medically necessary services to children who are technology-dependent or medically unstable. (Am. Compl. ¶¶ 60, 69, ECF No. 28.) PMDC facilities such as Mercer are licensed by NJDOH and provide services for which they receive reimbursement from Medicaid. (*Id*. at ¶¶ 58–59, 69, 76.) On November 3, 2003 NJDOH placed a moratorium on licensing PMDC facilities after an audit found that the licensing practices were incompatible with NJDHS rules. (*Id*. at ¶¶ 63, 74.) Specifically, licenses had been issued based on a 30 square feet per person rule, but NJDHS had a limit of 27 patients per facility per day ("27 Rule"). (*Id*. at ¶¶ 65–74.) At that point, Mercer had a PMDC license for 70 to 72 patients based on the facility's square footage. (*Id*. at ¶ 75; License, Gertsberg Aff. Ex. C, ECF No. 149-15.) On November 16, 2009 the 27 Rule was officially adopted and took effect on July 1, 2010. *See* N.J.A.C. §§ 8:43J–2.3(b), 10:166–2.1(a)(3).

In early March 2011 New Jersey's Department of Health and Senior Services ("NJDHSS") fined Mercer, citing violations of the 27 Rule among other things. (NJDHSS Notice of Curtailment, Gertsberg Aff. Ex. F, ECF No. 149-18.) Mercer was directed to retain a Consultant Administrator for at least 25 hours per week in order to come into compliance with applicable New Jersey PMDC licensing regulations. (*Id*.) Mercer initially hired New Era Health Associates Corporation as its Administrative Consultant, but then replaced them with Defendant Carlisle. (Am. Compl. ¶¶ 18, 24–46; New Era Consulting Agreement, Gertsberg Aff. Ex. I, ECF No. 149-21; Signed Carlisle Consulting Agreement, Gertsberg Aff. Ex. V, ECF No. 149-34.) Plaintiffs claim that Mercer retained Carlisle based on the recommendation of Deborah Gottlieb

---

Deputy Attorney General; John Guhl, DMAHS Director; Jennifer Velez, NJDHS Commissioner; Mary O'Dowd, NJDOH Commissioner; and Governor Christopher Christie.

at NJDOH.  (Bunting Dep., Gertsberg Aff. Ex. A at 39:2–11, ECF No. 149-12; Grissom Dep., Gertsberg Aff. Ex. B at 144:17–145:25, ECF No. 149-13.)

Beverlyn Grissom is a shareholder and Vice President of Horizon Pediatric Systems, Inc., which is the sole owner of Mercer, and Carl Underland is the owner of Carlisle.  (Grissom Dep., Gertsberg Aff. Ex. B at 12:18–14:6; 145:17–147:10.)  Between May 10, 2011 and May 13, 2011, Grissom and Underland exchanged drafts of the Carlisle consulting contract via e-mail and had discussions about the terms of the contract over the phone.  (Gertsberg Aff. Exs. K, M, N, U, ECF Nos. 149-23, 149-25, 149-26, 149-33.)  The parties dispute the contents of such discussions.  Grissom claims that Underland represented that a 30-day cancellation provision would be included in the contract, essentially making it a month-to-month contract rather than a contract for a fixed term of twelve months.  (Grissom Dep., Gertsberg Aff. Ex. B at 187:9–189:25.)  Underland asserts there was no promise of any 30-day termination provision.  (Underland Dep., Stoma Certification Ex. I at 104:24–105:7, ECF No. 131-8.)  It appears that the parties signed the contract on May 20, 2012 at Carlisle's office, but Plaintiffs claim that at the signing, Underland improperly switched out a contract containing a 30-day cancellation provision with one that did not.  (E-mail from Carlisle to Mercer on May 13, 2011, Gertsberg Aff. Ex. U, ECF No. 149-33; Grissom Dep., Gertsberg Aff. Ex. B at 190:25–197:21.)  Plaintiffs allegedly did not become aware of the fact that there was no 30-day termination provision in the contract they signed until the end of July or beginning of August 2011, two months after the contract had been executed and at the time when Carlisle was reaching out to Mercer about unpaid invoices.  (Bunting Aff. ¶ 40, ECF No. 149-4.)  However, even after this discovery, there is no evidence that Plaintiffs informed Carlisle that they wished to cancel the contract.  Moreover, Plaintiffs subsequently paid Carlisle an additional $75,000 for services performed under the contract.  (*Id*. at ¶ 42.)  Plaintiffs

3

allege that on July 29, 2011 Carlisle contacted Deborah Gottlieb, the Director of Program Compliance and Health Care Financing at NJDOH, informed her of Mercer's failure to pay Carlisle, asked for her help in the matter, and made false statements about Mercer that damaged its reputation. (Gertsberg Aff. Exs. Q, R, S, ECF Nos. 149-29, 149-32, 149-31.)

Defendant Greenwald is a Vice President and Corporate Counsel of Carlisle, as well as the Majority Leader and Budget Chairman of the New Jersey State Assembly. (Greenwald Dep., Ex. D, at 60:17–63:19, ECF No. 132-6.) Greenwald claims that his only involvement in the Mercer-Carlisle consulting arrangement is that in August 2011, after the contract had been executed, he reached out to Mercer's outside legal counsel Karim Kasper on Carlisle's behalf, seeking payment for outstanding invoices. (*Id*. at 61:12–64:9.) Plaintiffs allege that Greenwald's involvement was more extensive, citing a May 24, 2011 e-mail in which Underland directed Greenwald to "see me re: application to the Mercer County Children's Medical Day Care program" as well as the fact that Greenwald was copied on Carlisle e-mails demanding payment on the contract and on e-mails to NJDHSS and others referencing the contract. (E-mail from Underland to Greenwald on May 24, 2011, Gertsberg Aff. Ex. Y., ECF No. 149-37; E-mail from Underland to Kevin DeSimone and Peter Lillo on August 2, 2011 and Plaintiff's Response to Defendant's Interrogatories, Gertsberg Aff. Ex. S, ECF No. 149-31; E-mail from Underland to Bunting and Grissom on August 3, 2011, Gertsberg Aff. Ex. R, 149-30.) Plaintiffs claim that Greenwald was involved in perpetuating Carlisle's fraud against Mercer.

Despite not being paid, Carlisle apparently continued to provide services to Mercer under the contract until November 2011, at which time it terminated the contract due to lack of payment. (November 30, 2011 Letter of Termination, Stoma Certification Ex. Y, ECF No. 131-11; Grissom Dep. at 224: 14–225:2, ECF No. 149-13.) In November 2011 Mercer replaced

Carlisle with another consultant but ultimately ceased operations in July 2012.  (Bunting Aff. ¶ 45.)

Plaintiffs filed their Complaint on March 8, 2013 and amended it on May 16, 2013.  (ECF No. 28).  On February 10, 2014 and March 4, 2014 the Court granted in part Defendants' Motion to Dismiss the Amended Complaint, leaving only Counts II (preemption), VI (fraud by Greenwald), and VII (fraud by Carlisle) remaining.  (ECF Nos. 59, 60, 69, 76, 77.)  Plaintiffs seemingly allege in Count VI that Greenwald failed to disclose his connection to Carlisle and helped to perpetuate Carlisle's misrepresentations and fraudulent contract with Mercer.  On September 14, 2015 the Court granted judgment in favor of State Defendants and State Officials on Count II.  (ECF No. 160.)  Presently before the Court is Greenwald's motion for summary judgment on the Count VI fraud claim.  (ECF No. 132.)

## DISCUSSION

A. Legal Standard

Summary judgment should be granted if "the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "affect[s] the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Id*.  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007).

  B. Analysis

Count VI of the Amended Complaint alleges fraud—specifically that Defendants, including Greenwald, (1) fraudulently and falsely advised Mercer it was required to hire an Administrative Consultant; and (2) failed to disclose both that Carlisle was not an independent PMDC Consultant and the conflict of interest "inherent in forcing Plaintiff Mercer to make $25,000 a month payments to the company of Defendant Majority Leader Greenwald." (Am. Compl. at 50, ECF No. 28.) Plaintiffs seemingly assert that Greenwald perpetuated Carlisle's misrepresentations and fraudulent contract with Mercer by failing to disclose the conflict of interest and by asking Mercer to pay for services rendered under an allegedly fraudulent contract. Count VI was previously dismissed against all Defendants except for Greenwald. (ECF Nos. 59, 60, 69, 76, 77.) Greenwald presently moves for summary judgment on this sole remaining claim against him.

To assert a common-law fraud claim in New Jersey, a plaintiff must establish "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the

defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Walid v. Yolanda for Irene Couture, Inc.*, 40 A.3d 85, 90 (N.J. Super. Ct. App. Div. 2012) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005)); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). The failure to reveal a fact can be fraudulent if there is a duty to disclose. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 813 (N.J. Super. Ct. App. Div. 2000); *Stockroom, Inc. v. Dvdacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (citing *Perri v. Prestigious Homes, Inc.*, 2012 WL 95564, at *5 (N.J. Super. Ct. App. Div. Jan. 13, 2012)). In the context of a business transaction, a party has no duty to disclose information to another party unless (1) there is a fiduciary relationship between them, (2) the transaction itself is fiduciary in nature, or (3) one party "expressly reposes a trust and confidence in the other." *City of Millville v. Rock*, 683 F. Supp. 2d 319, 330 (D.N.J. 2010) (quoting *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 725 A.2d 1133, 1139 (N.J. Super. Ct. App. Div. 1998)).

Greenwald argues that he is entitled to summary judgment because Plaintiffs have not demonstrated any of the required fraud elements. Greenwald asserts that he was not involved in any discussion with NJDOH or Deborah Gottlieb regarding Mercer's engaging Carlisle as an Administrative Consultant, nor was he involved in the negotiation, execution, or performance of services under the contract. Greenwald's only involvement was to call Mercer's outside attorney to collect on outstanding unpaid invoices in August 2011. (Greenwald Dep., Ex. D, at 61:12–64:9, 126:13–127:4, ECF No. 132-6; Grissom Dep., Gertsberg Aff. Ex. B, at 65:1–70:12, ECF No. 149-13; Greenwald's Answer to Plaintiff's Interrogatories, Ex. F. at ¶ 17, ECF No. 132-8.) Plaintiffs claim that Greenwald was more involved and point to a May 24, 2011 e-mail in which Underland directed Greenwald to "see me re: application to the Mercer County Children's

Medical Day Care program" as well as the fact that Greenwald was copied on e-mails demanding payment under the contract and on e-mails to NJDHSS and others referencing the contract. (E-mail from Underland to Greenwald on May 24, 2011, Gertsberg Aff. Ex. Y., ECF No. 149-37; E-mail from Underland to Kevin DeSimone and Peter Lillo on August 2, 2011 and Plaintiff's Response to Defendant's Interrogatories, Gertsberg Aff. Ex. S, ECF No. 149-31; E-mail from Underland to Bunting and Grissom on August 3, 2011, Gertsberg Aff. Ex. R, 149-30.)

Upon review of the record, the Court finds that Plaintiffs have failed to raise a genuine dispute of material fact on their fraud claim against Greenwald. Plaintiffs have not identified any knowing, affirmative, material misrepresentations made by Greenwald to Mercer. Greenwald was not involved in the discussions to retain Carlisle as an Administrative Consultant, and his only communications to Mercer seem to have been in August 2011, months after the contract was signed, to inform Mercer's counsel about outstanding fees owed under the contract. The few e-mails Plaintiffs rely on to challenge Greenwald's claim of his limited role merely suggest that Greenwald was aware Carlisle had an arrangement with Mercer after the contract was executed; they do not reveal any false or misleading statements by Greenwald to Plaintiffs, nor do they indicate that Greenwald had knowledge of any specific details of the contract. To the extent Plaintiffs allege fraud based on Greenwald's failure to disclose a conflict of interest, Plaintiffs have not identified any duty that would require disclosure of such information. *See City of Millville*, 683 F. Supp. 2d at 330 (explaining the three situations in which a duty to disclose arises in the context of a business transaction.) Nor have Plaintiffs demonstrated reliance on any alleged misstatement or omission by Greenwald, as he was not involved in the negotiation and execution of the contract and does not seem to have ever interacted directly with Mercer. Based on the record, no reasonable juror could find that Plaintiffs have demonstrated

the required elements of a fraud claim. Therefore, summary judgment on Count VI in favor of Greenwald is warranted.

Plaintiffs further argue in their opposition brief that Greenwald (1) violated New Jersey's Conflict of Interest Law, N.J.S.A. 52:13D–12 *et seq.*, (2) "violated the public trust by permitting Carlisle to 'trade on influence,'" and (3) should be held liable as a corporate officer for Carlisle's fraudulent conduct. (Pl.'s Opp. Br. at 40–57, ECF No. 149.) However, none of these claims were alleged counts in the Amended Complaint, nor were they described as part of the fraud claim in Count VI. (*See generally* Am. Compl., ECF No. 28.) Fraud claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), *Frederico*, 507 F.3d at 200, and "a complaint cannot be amended (or supplemented) by way of an opposition brief." *Swift v. Pandey*, No. 13-649 (JLL), 2013 WL 6022093, at *2 (D.N.J. Nov. 13, 2013) (citing *Pa. ex rel. Zimmerman v. Pepsico*, 830 F.2d 173 (3d Cir. 1998)). Moreover, even if these claims had been properly asserted in the Amended Complaint, they would still not survive summary judgment for the reasons below.

Regarding Plaintiffs' Conflict of Interest claim, the statute states, in relevant part:

> [n]o . . . member of the Legislature, nor any partnership, firm or corporation in which he has an interest . . . shall represent, appear for, or negotiate on behalf of, or agree to represent, appear for, or negotiate on behalf of, any person or party other than the State in connection with any cause, proceeding, application or other matter pending before any State agency.

N.J.S.A. 52:13D–16(b). Plaintiffs have not shown that Greenwald represented, appeared for, negotiated on behalf of, or agreed to represent, appear for, or negotiate on behalf of Mercer in connection with a matter pending before a State agency. To the extent the Mercer-Carlisle contract may be construed to create a relationship whereby Carlisle may represent, appear for, or negotiate on behalf of Mercer, Plaintiffs have not identified any evidence to suggest that

9

Greenwald was involved in providing services under the contract, and he is not referenced in the contract. Plaintiffs' reliance on a few e-mails as evidence of Greenwald's broader involvement fails to raise a dispute of material fact as to any element of N.J.S.A. 52:13D–16(b). These e-mails occurred after the contract had been negotiated and executed and do not reveal any actual participation by Greenwald or any representation by Greenwald on behalf of Mercer before any State agency. Nor do Greenwald's calls to Mercer's counsel in August seeking payment under the contract constitute representing, appearing for, or negotiating on behalf of Mercer. *Compare to Rutgers Executive Comm'n on Ethical Standards Re: Appearance of Rutgers Attorneys*, 116 N.J. 216, 218 (1989) (assessing whether New Jersey's Conflicts of Interest law applies to a Rutgers law professor who appeared before State agencies on behalf of clients in connection with a clinical teaching program). In short, Plaintiffs have not identified in the record any conduct by Greenwald that falls within N.J.S.A. 52:13D–16(b).

In addition, Plaintiffs seem to allege a conflict of interest under N.J.S.A. 52:13D–19, which prohibits a member of the legislature from "knowingly . . . or through any corporation which he controls, or in which he owns or controls more than 1% of the stock . . . undertake or execute, in whole or in part, any contract . . . made, entered into, awarded, or granted by any State agency . . . ." N.J.S.A. 52:13D–19. However, this claim also fails because, at the very least, Plaintiffs have not demonstrated that the Mercer-Carlisle contract falls within the scope of N.J.S.A. 52:13D–19. The statutory provision is entitled "Contracts, agreements, sales or purchases with state" and cases interpreting the provision have applied it to contracts with the State. *See, e.g., Turner v. Dep't of Human Servs.*, 337 N.J. Super. 474, 476–78 (App. Div. 2001) (finding that N.J.S.A. 52:13D–19 bars an attorney employee of the Department of Human Services from serving as a pool attorney for the Office of the Public Defender ("OPD") because

10

serving as a pool attorney constitutes a contractual relationship with OPD given the fact that, among other reasons, OPD pays pool attorneys for such services). Here Plaintiff has not articulated nor demonstrated with references to any caselaw or facts in the record how the Mercer-Carlisle contract is a contract with a State agency within the scope of N.J.S.A. 52:13D–19. Plaintiffs have not identified any evidence indicating that the State is a party to the contract or that the State pays for Carlisle's services under the contract. Therefore none of Plaintiffs' New Jersey conflict of interest law claims may proceed.

Furthermore, to the extent Plaintiffs assert separate claims of violation of the public trust or trading on influence, they have again failed to identify a sufficient legal and factual basis for such claims. The only authority Plaintiffs have cited in their opposition brief to support such claims is *Matter of Advisory Comm. on Prof'l Ethics Opinion 621*, which contains a single, passing reference to "trading on influence," without any elaboration as to the possibility of a cause of action for such a claim. 128 N.J. 577, 603 (1992). The rest of that opinion discusses the impropriety of having a part-time legislative aide represent a private interest before a state agency under New Jersey's Conflicts of Interest law, and as discussed above, Plaintiffs have not identified any representation by Greenwald on behalf of Mercer before a state agency. Thus, to the extent Plaintiffs seek to assert conflict of interest, violation of the public trust,[3] and trading on influence claims, such claims fail due to inadequate pleading in the Amended Complaint and on the merits under the summary judgment standard.

---

[3] To the extent Plaintiffs seek to bring a violation of the public trust claim under N.J.S.A. 52:13D–12, they have identified no legal authority to support such a cause of action separate from a claim under N.J.S.A. 52:13D–16.

Lastly, with respect to Plaintiffs' corporate officer liability claim, the Amended Complaint is completely devoid of any reference to such a claim,[4] and fraud claims must be pleaded with specificity under Federal Rule of Civil Procedure 9(b) in order to provide Defendants with adequate notice of such claims. *Frederico*, 507 F.3d at 200. Therefore, the Court will not further address this claim, except to note that even if such a claim were adequately pled, Plaintiffs have not established any basis for such a claim in light of Greenwald's minimal involvement in and limited knowledge of the Mercer-Carlisle arrangement, among other reasons.

## CONCLUSION

Based on the above, the Court will grant Defendant Greenwald's Motion for Summary Judgment. A corresponding Order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

---

[4] In contrast, Plaintiffs' conflict of interest claims were at least referenced in the factual allegations of the Amended Complaint despite not being asserted in any specific count. (Am. Compl. at ¶ 147, ECF No. 28.)